FILED
NOV 15 2013
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| STANLEY ORAKWUE, and JERRY EGWU, Individually, and on behalf of all others similarly situated, Plaintiffs, v. SELMAN & ASSOCIATES, LTD., JUANITA C. SELMAN, and TOM H. SELMAN, Defendants. | § § § § § § § § § § § § | MO-13-CV-052 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR LEAVE TO FILE AN AMENDED ANSWER

Before the Court are Defendants' Motion for Leave to File an Amended Answer and Memorandum in Support (Doc. No. 18), Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to File Counterclaims (Doc. No. 19), and Defendants' Memorandum of Law in Reply to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to File Counterclaims (Doc. No. 20). After consideration, the Court is of the opinion that Defendants' motion should be granted in part and denied in part.

## BACKGROUND

On May 31, 2013, Plaintiffs filed suit, individually and on behalf of all others similarly situated, alleging Defendants failed to pay them overtime compensation at one-and-one-half times their regular rate of pay for hours worked in excess of forty hours per week in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Plaintiffs allege they work for Defendants' geological consulting and surface logging company as wellsite geologists, known as Mud Loggers.

1

Plaintiffs claim they were required to work over forty hours a week but were not paid for their overtime. Plaintiffs further contend they did not fall under any exemption from overtime under the FLSA.

Defendants timely filed the motion currently before the Court on September 5, 2013 seeking to amend their answer to add both affirmative defenses (unjust enrichment, unclean hands, and fraudulent inducement) and counterclaims (breach of covenant to not compete, breach of non-disclosure covenant, fraud, tortious interference with contract, and civil conspiracy) to their pleadings. Plaintiffs do not oppose Defendants' motion to add affirmative defenses. Rather, Plaintiffs contest Defendants' ability to assert counterclaims in a FLSA case.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) requires a trial court "to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982)). A district court must possess a "substantial reason" to deny a request for leave to amend. *Id.* (quoting *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985)). However, decisions concerning motions to amend are "entrusted to the sound discretion of the district court...." *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)).

As outlined by the Supreme Court, the Fifth Circuit examines five factors to determine whether to grant a party leave to amend their pleadings: 1) undue delay; 2) bad faith or dilatory motive; 3) repeated failure to cure deficiencies by previous amendments; 4) undue prejudice to the

opposing party; and 5) futility of the amendment.[1]  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent any of these factors, the leave sought should be "freely given." *Foman*, 371 U.S. at 182.

## DISCUSSION

As stated above, Defendants seek permission to add both affirmative defenses (unjust enrichment, unclean hands, and fraudulent inducement) and counterclaims (breach of covenant to not compete, breach of non-disclosure covenant, fraud, tortious interference with contract, and civil conspiracy) to their pleadings. The Court will address both requests below.

### I. Affirmative Defenses

As to Defendants' motion to add affirmative defenses, Plaintiffs do not oppose it. Further, none of the five factors enumerated above are present regarding Defendants' request as to their affirmative defenses. *See Foman*, 371 U.S. at 182. Therefore, the Court grants Defendants' motion as to their affirmative defenses.

### II. Counterclaims

Turning to Defendants' motion to add counterclaims, Plaintiffs argue the motion should be denied because the Fifth Circuit, in *Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974), *rev'd on other grounds* by *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988), and its progeny, has prohibited

---

[1] To determine futility, the court applies "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). Federal Rule of Civil Procedure 12(b)(6) allows a defendant to present, via motion, a defense for failure to state a claim upon which relief can be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To survive dismissal, a plaintiff must plead specific facts that "state a claim to relief that is plausible on its face," not mere conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

counterclaims in FLSA actions. Defendants' response is three-fold: (1) *Brennan* only bars set-offs that are not related to FLSA claims; (2) *Brennan* does not bar counterclaims against actions based on fraud; and (3) their counterclaims are compulsory and subject to preclusion if not raised.

A.  **Defendants' arguments under *Brennan* and its progeny**

In *Brennan*, the Fifth Circuit held set-offs and counterclaims are inappropriate in cases brought to enforce the FLSA's minimum wage and overtime provisions. *Brennan*, 491 F.2d at 4. In reversing an order permitting a set-off for the value of goods, including gas and supplies from the company store, furnished by the employer to its employees, the Fifth Circuit reasoned: (1) disputes over claims against back wages were foreign to the genesis, history, interpretation, and philosophy of the FLSA; (2) the only economic feud contemplated by the FLSA involved the employer's obedience to minimum wage and overtime; (3) cluttering FLSA proceedings with the minutiae of other employer-employee relationships would be antithetical to the purpose of the FLSA; and (4) set-offs against back pay awards deprived the employee of the "cash in hand" contemplated by the FLSA and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provision. *See id.*

In *Singer v. Waco*, 324 F.3d 813 (5th Cir. 2003), employee firefighters successfully sued the City of Waco (the "City") on overtime payment claims under the FLSA. The firefighters worked a regularly recurring schedule of twenty-four hours on duty, followed by forty-eight hours off duty. *Singer*, 324 F.3d at 817. According to this schedule, the fire fighters would work cycles consisting of 120 hours in one fourteen-day period, 120 hours in the next fourteen-day period, and 96 hours in the third fourteen-day period. *Id.* Despite the difference in hours worked between these periods, the City paid its firefighters the same salary every two weeks. *Id.* Under the FLSA, a municipality

paying a biweekly salary must pay overtime compensation to its firefighters when they have worked over 106 hours in a fourteen-day period. *Id.* at 818.

In determining the firefighters' overtime pay, the district court found the City's method of calculating overtime payments resulted in small deficiencies in overtime pay ($6.60) in the work periods in which the firefighters worked 120 hours. *Id.* at 826. The City's method, however, resulted in much larger overpayments ($126.20) in the work periods in which the firefighters worked 96 hours, and were thus not eligible for overtime pay. *Id.* The district court therefore offset the overpayments made by the City in the 96–hour work periods against the shortfalls in the 120–hour work periods. *Id.*

Accordingly, the Fifth Circuit in *Singer* considered whether the district court properly allowed the City to set-off wage overpayments to the firefighters in some work periods against shortfalls or deficiencies in wages in other work periods. Viewing the overpayments as pre-payments—i.e. payments the employer paid in advance to the employees to compensate them for the shortfalls they would receive in subsequent work periods—the Fifth Circuit held the district court did not err in allowing the set-offs. *Id.* at 828. The Fifth Circuit reconciled its holding in *Singer* with its holding in *Brennan* by observing "the offsets permitted by the district Court [in *Brennan*] caused the final awards of many of the defendants' workers to drop below the statutory minimum." *Singer*, 324 F.3d at 828 n.9 (citing *Brennan*, 491 F.3d at 3.). The Fifth Circuit pointed out no party in *Singer* contended the offset might cause the employees' wages to fall below the statutory minimum wage. *Id.* That is, the firefighters in *Singer* did not receive less overtime wages than they were entitled to under the FLSA because of the set-off; they simply received some of their

overtime pay in advance, which compensated them for other pay periods in which they received insufficient overtime pay.

In a subsequent case, *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036 (5th Cir. 2010), the Fifth Circuit affirmed a district court's decision not to address the employer's counterclaims for a set-off in an amount equal to damages caused by the employee's fraud and breach of his contractual obligation to notify the employer of his address change. The Fifth Circuit relied on *Brennan's* prohibition against set-offs in FLSA cases and distinguished the set-off allowed in *Singer* as one that "simply acknowledged that the [employer] has already paid the bulk of its overtime obligations." *Gagnon*, 607 F.3d at 1042–43. It pointed out that unlike *Singer*, the employer had not paid the employee "any additional sums that could be characterized as advanced or inappropriate amounts subject to an offset against the overtime owed to him." *Id.* at 1043.

*Martin v. PepsiAmericas, Inc.*, 628 F.3d 738 (5th Cir. 2010), is the most recent opinion in which the Fifth Circuit not only discussed the earlier cases, but stated it "continue[d] to look with disfavor on set-offs unless the money being set-off can be considered wages that the employer pre-paid to the plaintiff-employee." *Martin*, 628 F.3d at 741–42. The Court clarified "it was the unique character of the set-offs in *Singer*—that they represented overtime obligations already fulfilled—that allowed for a narrow exception to the bright-line rule spelled out in [*Brennan*]." *Id.* Applying its previous cases, the Fifth Circuit held the value of the severance agreement at issue could not be used to set-off unpaid overtime wages, even if the employee had allegedly breached the severance agreement by bringing suit for unpaid overtime. *Id.* at 742–43. The Fifth Circuit rejected the employer's argument that the case was similar to *Singer* because in both cases, the employer paid some extra money or benefits to the employee to which the employee was not otherwise entitled.

*Id.* at 742. The Fifth Circuit explained the employer's damages flowed from a breach of contract and the employer was not entitled to set-off those damages because unlike *Singer*, the money and benefits the employer paid to the employee "were not wage payments, advanced or otherwise; they were not related to her labors at all." *Id.* at 743.

**1. Breach of covenant to not compete, breach of non-disclosure covenant, tortious interference with contract, and civil conspiracy proposed counterclaims**

Defendants argue *Brennan* merely precludes set-offs requested from employers in FLSA litigation when the set-offs are based upon simple state claims arising out of the employer-employee relationship. Defendants assert, in the alternative, if *Brennan* does apply their proposed counterclaims are excepted through *Singer*. In other words, Defendants claim Plaintiffs received additional compensation for their work as well as for work they did not perform by breaching the covenants not to compete and disclose, interfering with the Employment Agreement, and by conspiring to interfere with each other's Employment Agreement.

Here, although in seeking damages for their proposed counterclaims Defendants do not use the word "set-off," it is clear the effect of such claims would be to reduce or negate the amount of money sought by Plaintiffs. That is, the damages under these proposed counterclaims basically amount to set-offs and fall under the rule in *Brennan*, not the narrow exception outlined in *Singer* as Defendants argue. Because Plaintiffs claim they were not paid their overtime wages at all, any set-off allowed would result in their final awards dropping below the statutory minimum. Additionally, the damages sought as set-offs under these proposed counterclaims do not represent wages pre-paid to Plaintiffs or wage obligations already fulfilled. The damages are more akin to the set-off sought in *Martin* because they represent the damages flowing from Plaintiff's alleged breach

7

of the parties' Employment Agreement. Thus, under *Brennan* and its progeny the breach of covenant to not compete, breach of non-disclosure covenant, tortious interference with contract, and civil conspiracy proposed counterclaims for set-offs are not permitted in this FLSA action. Accordingly, allowing Defendants to assert these counterclaims would be futile and Defendants' motion should be denied as to these proposed counterclaims. *See Foman*, 371 U.S. at 182.

### 2. Fraud proposed counterclaim

As to Defendants' fraud counterclaim, Defendants argue *Brennan* does not bar counterclaims based on fraud. Defendants' counterclaim based on fraud alleges Plaintiffs fabricated their time cards and therefore were not entitled to the wages they were paid let alone overtime. Defendants allege Plaintiffs worked for two competing geological consulting firms and turned in time sheets for work completed on the same day and times to both companies. Defendants claim Plaintiffs knew their time cards were false and intentionally billed both employers for the same days of work.

Cognizant of the Fifth Circuit's bright-line rule in *Brennan*, the Court notes the Fifth Circuit in *Brennan* also outlined an exception to its rule. The Fifth Circuit recognized an exception to the requirement of "cash in hand" contemplated by the FLSA when an employee has previously misappropriated funds, as the return of wrongfully taken money could not reduce the employee's wage below the minimum. *Brennan*, 491 F.2d at 3 n.2 (citing *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1198 (5th Cir. 1972) (holding where the employee has previously misappropriated funds, temporary reductions below the statutory minimum have been permitted in order that the employer might recoup the losses. "In such a case there would be no violation of the [FLSA] because the employee has taken more than the amount of his wage and the return could in no way reduce his wage below the minimum."), *cert. denied*, 409 U.S. 1108 (1973)).

8

Here, Plaintiffs' alleged fraud involving their time cards and the money they have already been paid for the alleged non-worked time would amount to a misappropriation. As such, the return of misappropriated money for the non-worked time could not reduce the Plaintiffs' wages below the minimum. This is the same type of claim that has been excepted from the *Brennan* doctrine. *Brennan*, 491 F.2d at 3 n.2 (citing *Mayhue's Super Liquor Stores*, 464 F.2d at 1198). Therefore, if Defendants' counterclaim is taken as true, they have stated a plausible claim for relief; allowing this amendment would not be futile. Further, none of the other factors—undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, or undue prejudice to the opposing party—are present. *See Foman*, 371 U.S. at 182. Therefore, Defendants should be allowed to amend their answer to include this counterclaim based on fraud.

### B. Defendants' argument that their proposed counterclaims are compulsory

Defendants also argue their proposed counterclaims arise out of the same transaction or occurrence on which Plaintiffs base their FLSA claim making them compulsory claims. Defendants further assert because their counterclaims are compulsory, they will suffer preclusion if they do not bring the counterclaims in this action. As such, Defendants contend the Court should exercise supplemental jurisdiction over their counterclaims.

Compulsory counterclaims are addressed by Federal Rule of Civil Procedure 13(a), which reads:

> A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against any opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

9

Fed. R. Civ. P. 13(a)(1). The Fifth Circuit has addressed the appropriate inquiry to determine whether a claim is a compulsory counterclaim. In making such a determination, courts should ask:

> (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship[2] between the claim and the counterclaim.

*Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992) (citing *Plant v. Blazer Finan. Servs.*, 598 F.2d 1357, 1360–61 (5th Cir. 1979)). If any of these four questions results in an affirmative answer then the counterclaim is compulsory. *Id.*

**1. Breach of covenant to not compete, breach of non-disclosure covenant, tortious interference with contract, and civil conspiracy proposed counterclaims**

As to Defendants' breach of covenant to not compete, breach of non-disclosure covenant, tortious interference with contract, and civil conspiracy proposed counterclaims, although there is likely some overlap in the factual basis for the Plaintiffs' FLSA claim and these proposed counterclaims, the focus of the relevant inquiry for each is different. The relevant question for Plaintiffs' FLSA claim is whether they received the wages due for any work performed over their forty hour work week. By contrast, the issue at the heart of these proposed counterclaims is whether: (1) Plaintiffs disclosed confidential information to other companies; (2) Plaintiffs violated their agreement with Defendants, upon voluntary or involuntary termination, to not take a job with a competing company; (3) each Plaintiff interfered with the other's Employment Agreement with

---

[2] A logical relationship exists when "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendants." *Montgomery Elevator Co. v. Bldg. Eng'r Serv. Co., Inc.*, 730 F.2d 377, 380 (5th Cir. 1984).

Defendants; and (4) Plaintiffs conspired to commit breach of non-disclosure, breach of non-compete, and tortious interference. Clearly, these proposed counterclaims do not arise out of the same transaction as Plaintiff's FLSA claim for overtime pay; they arise irrespective of whether Plaintiffs were paid.

Therefore, after reviewing the four factors set forth above in paragraph II.B., the Court finds Defendants' proposed counterclaims—breach of covenant to not compete, breach of non-disclosure covenant, tortious interference with contract, and civil conspiracy counterclaims—are not compulsory. Regardless, because these counterclaims are not permitted in an FLSA case under *Brennan*, the Court would decline to exercise supplemental jurisdiction over them.

### 2. Fraud proposed counterclaim

As to Defendants' proposed fraud based counterclaim, a district court faced with the question of whether to exercise supplemental jurisdiction over fraud based counterclaims in and FLSA case, *Ahle v. Veracity Research Co.*, 641 F.Supp.2d 857 (D. Minn. 2009), found the counterclaims[3] alleging plaintiffs falsified time and mileage reports and failed to perform required duties while being compensated by defendant are closely intertwined with the FLSA overtime claims, involving similar factual and legal questions regarding time worked and entitlement to compensation. *Ahle*, 641 F.Supp.2d at 863. Specifically, the counterclaims turn on the question of whether defendant is entitled to recover compensation paid to plaintiffs for time they claimed they were performing work for defendant but actually were engaged in conduct for which they were not entitled to compensation. *Id.* at 863–64.

---

[3] The counterclaims alleged are breach of the duty of loyalty and honesty, forfeiture or disgorgement, intentional misrepresentation, and negligent misrepresentation. *Ahle*, 641 F.Supp.2d at 863.

Again, in addressing essentially the same question of supplemental jurisdiction over a counterclaim alleging a plaintiff in a FLSA overtime case received compensation for which he was not entitled, one court noted: "Defendant asserts [as the basis of its counterclaim] that Plaintiff received *more* payments than those to which he was entitled as an employee of Defendant. Plaintiff is claiming [as the basis of its FLSA claims] that he received too *little* payment as an employee of Defendant." *Lombardi v. City of Cornersville*, No. 1:06-0072, 2007 WL 190324, at *1–2 (M.D. Tenn. Jan. 22, 2007) (emphasis in original). The court concluded, therefore, the plaintiff's FLSA overtime claim and the defendant's counterclaim arose out of the same case and controversy. *Id.* at *2.

In *Rogers v. Harper Vehicles, LLC*, No. 3:05-CV-533, 2006 WL 2708322 (E.D. Tenn. Sept. 19, 2006), yet another FLSA overtime case, the district court there also considered whether supplemental jurisdiction existed over a defendant's counterclaim that a plaintiff "padd[ed] her time and falsif[ied] her time records which resulted in her being paid for time that she did not actually work." *Rogers*, 2006 WL 2708322, at *1. In finding supplemental jurisdiction because the FLSA claims and the counterclaims shared a common nucleus of operative fact, the court reasoned "plaintiff's overtime claims and defendant's fraud claims [both] involve the question of how much money defendant should have paid plaintiff for her services" and they both would require the same evidence, consisting of the plaintiffs payroll records, changes made to the records, and weekly payments made to the plaintiff. *Id.*

Here, Defendants' proposed counterclaim based on fraud is similar to those stated above in *Ahle*, *Lombardi*, and *Rogers*. Plaintiffs claim they were not paid for overtime hours worked. Defendants contend Plaintiffs could not have worked the overtime hours as they fabricated their time

cards. Thus, the allegations of the Complaint and proffered fraud based counterclaim in this action establish there is a "logical relationship" between them. That is, the fraud counterclaim is logically connected to, and based on, the same operative facts as Plaintiffs' FLSA claim; both Plaintiffs' overtime claim and Defendants' fraud claim involve the question of how much money Defendants should have paid Plaintiffs for their services. Based on these facts, the fraud counterclaim appears compulsory and subject to preclusion if not raised. As such, this Court has supplemental jurisdiction over Defendants' proposed fraud counterclaim. *See* 28 U.S.C. § 1367 ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution). Further, although the fraud based counterclaim, if successful, may effectively reduce Plaintiffs' final damages award, this counterclaim is not a prohibited "set-off" as contemplated in *Brennan*. Rather, this proposed fraud counterclaim lies squarely within the misappropriated funds exception outlined in *Brennan*. *See Brennan*, 491 F.3d at 3 n.2; *see also Ahle*, 641 F.Supp.2d at 863–64; *Lombardi*, 2007 WL 190324, at *1–2; *Rogers*, 2006 WL 2708322, at *1; *Hunter v. Kenaday Medical Clinic, Inc.*, No. 8:11–CV–643–T–23TGW, 2011 WL 2600656, at *1 (M.D. Fla. June 30, 2011).

## CONCLUSION

Based on the above-stated reasons, the Court grants Defendants' request for leave to amend their pleadings to include their affirmative defenses set forth in their motion. The Court further grants Defendants' motion as to their fraud counterclaim. The Court, however, denies Defendants'

motion as to their breach of covenant to not compete, breach of non-disclosure covenant, tortious interference with contract, and civil conspiracy[4] counterclaims. Accordingly,

IT IS ORDERED that Defendant's Motion for Leave to File an Amended Answer (Doc. No. 18) is hereby **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

**IT IS SO ORDERED.**

**SIGNED** on this 14th day of **NOVEMBER, 2013**.

ROBERT JUNELL
United States District Judge
Western District of Texas

---

[4] The Court notes to establish a conspiracy claim, Defendants must prove both civil conspiracy and the underlying alleged fraud. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997). An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). The essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Id.* Although Defendants' civil conspiracy counterclaim outlines fraudulent behavior, which is discussed in paragraphs II.A.2. and II.B.2., the elements required to prove conspiracy require additional operative facts apart from the underlying fraud. These extra elements of proof place it in the category of counterclaims prohibited under *Brennan*. That is, the civil conspiracy claim requires more operative facts than just how much money Plaintiffs should have been paid.