**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

---

**STANLEY ORAKWUE,**and **JERRY EGWU**
Individually, and On Behalf of All Others Similarly
Situated,

Civil Action No.: 7:13-cv-00052-RAJ

Plaintiffs,

-against-

Honorable Robert A. Junell

**SELMAN ASSOCIATES, LTD., JUANITA C.
SELMAN,** and **TOM H. SELMAN,**

Defendants.

---

**JOINT MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT
AGREEMENT, PERMISSION TO SEND OUT NOTICES TO THE COLLECTIVE AND
CLASS MEMBERS FOR SETTLEMENT PURPOSES AND FOR A FINAL FAIRNESS
HEARING**

# I. INTRODUCTION

Plaintiffs, **STANLEY ORAKWUE,** and **JERRY EGWU** (collectively "Plaintiffs") and Defendants, **SELMAN ASSOCIATES, LTD., JUANITA C. SELMAN,** and **TOM H. SELMAN** (collectively "the Parties") respectfully seek the Court's preliminary approval of the Parties' Settlement Agreement, certification of a Nationwide Collective and Pennsylvania Class for settlement purpose, permission to send out notices to all collective and class members within (7) days of the order of preliminary approval, and scheduling of a Final Fairness Hearing for final approval of the settlement.  A true and correct copy of fully executed settlement and release agreement is attached hereto as **Exhibit "A."** A true and correct copy of the collective action settlement notice and opt-in consent form to the collective members is attached hereto as **Exhibit "B."** A true and correct copy of the class action settlement notice and claim form to the class members is attached hereto as **Exhibit "C."**

## II. STATEMENT OF MATERIAL FACTS AND PROCEDURAL FACTS

Plaintiffs commenced the instant action on May 31, 2013 under the Fair Labor Standards Act ("FLSA") claiming unpaid overtime wages. Plaintiffs filed Motion for Conditional Certification on November 15, 2013 and Motion to Compel Discovery on March 3, 2014. Defendants filed Motion for Summary Judgment on November 22, 2013.

After extensive motion practice and discovery, the Parties engaged in extensive settlement talks at arm's length including an in-person mediation with an independent mediator. Defendants dispute liability for any overtime payments to Plaintiffs and other Mud Loggers, and do not admit liability. However, Defendants have agreed to pay Plaintiffs and the class and collective an amount to settle the claims as detailed herein. Contemporaneous with the filing of

this settlement, Plaintiffs, with consent from Defendants, filed an Amended Complaint to include claims for proposed Nationwide Collective and a Pennsylvania Rule 23 Class.

The Parties jointly submit that, although no party hereto abandons any position taken in the Action, the Parties believe that continued litigation with respect to the issues resolved by this Agreement would be protracted, expensive, uncertain, and contrary to their best interests. Hence, the Parties jointly seek the Court's preliminary approval of this global settlement and seek certification and permission to send out notices to all collective and class members for settlement purpose, and scheduling of a Final Fairness Hearing.

### III. TERMS OF SETTLEMENT

The settlement amounts include a Qualified Settlement Fund ("QSF") of $1,133.333.33 for the class and collective, and an additional separate amount of $566,666.67 for attorney's fees. The QSF covers all payments of settlement money to the named Plaintiffs and all collective and class members, payment of all applicable incentive awards agreed by the Parties, the costs of litigation and costs for settlement fund distribution. See Section VII of the Settlement Agreement, **Exhibit "A,"** pg. 7-10.

The amounts of this settlement to be paid to Plaintiffs and all collective and class members will vary by individual employee based upon the length of employment of each individual with Defendants. The Parties believe that the amounts in the settlement agreement will fairly compensate Plaintiffs and all participating individuals. The Parties believe that this settlement is fair and reasonable given the evidence obtained from discovery and the likelihood of success on the merits of the claim. This settlement was arrived at after considerable arm's length negotiation by the attorneys for both Plaintiffs and Defendants and the use of an independent third party mediator.

### a. Nationwide Collective for Settlement Purpose

The Parties agree to the certification of a nationwide collective action for the purpose of settlement. The Nationwide Collective includes all those individuals who were employed by Defendants nationwide other than the State of Pennsylvania at any time from March 20, 2012 to the present in the position of Mud Logger, also referred to as Wellsite Geologist, pursuant to Section 216(b) of the FLSA. All the Nationwide Collective members, also referred as "Participating Party Plaintiffs," are required to submit a properly executed opt-in consent form within forty-five (45) days of mailing of the notice in order to participate in this settlement. 29 U.S.C. §216(b).

### b. Pennsylvania Rule 23 Class for Settlement Purpose

The Parties agree to the certification of a class action for Pennsylvania State overtime claims pursuant to Rule 23 of the Federal Rules of Civil Procedure for the purpose of settlement. The Pennsylvania Rule 23 class members are those Mud Loggers, also known as Wellsite Geologists, who were employed by Defendants in the State of Pennsylvania at any time from March 20, 2012 to the present. The Pennsylvania Rule 23 class members, also referred as "Participating Claimants" and different from the Nationwide Collective, are not required to submit an opt-in consent form, but must affirmatively opt out of the settlement or else they will be bound by its terms and be required to fill out a claim form to receive the settlement funds.

### c. Settlement Formula

For the settlement purpose, the amount of weekly damages that each Plaintiff, Participating Party Plaintiff and Participating Claimant can claim is $100.00 per work week.

The Parties agree that for each Work Week that a Plaintiff, Participating Party Plaintiff or Participating Claimant worked three (3) days or less, no overtime hours would result from those

Work weeks.[1] Hence, the Settlement Formula only affects Work Weeks during which a Plaintiff, Participating Party Plaintiff or Participating Claimant worked four (4) days or more. The total amount of damages that each Plaintiff, Participating Party Plaintiff and Participating Claimant is entitled to equals the weekly damages, $ 100.00, multiplied by the total number of Work Weeks for which a named Plaintiff, Participating Party Plaintiff/Claimant worked four (4) days or more. Furthermore, this Settlement does not include any work week of non-degreed Mud Loggers in 2014 as SELMAN has paid non-degreed Mud Loggers overtime wages since 2014.

The time period for damage calculations of Participating Party Plaintiffs and Participating Claimants is from March 20, 2012 to April 4, 2014. The time period for damage calculations of the named Plaintiffs shall be three (3) years from their filing date of the initial Complaint. The time period for damage calculations of the seventeen (17) individuals who have executed the consent to joint form for this Action and the Pennsylvania Action by April 3, 2014 shall be three (3) years from their execution of the Opt-In Consent Form. See Section VII (3) of the Settlement Agreement, **Exhibit "A,"** pg. 8-9.

If the total claimed fund exceeds the available QSF, each Participating Party Plaintiff and Participating Claim's payment will be decreased proportionally and receive their *pro rata* share. See Section VII (3) of the Settlement Agreement, **Exhibit "A,"** pg. 9.

### d. Incentive Payments

The Parties agreed to incentive payments for those persons who are named Plaintiffs and who have executed consent to join forms no later than April 3, 2014. The division and allocation of funds was made at the judgment of Plaintiffs' counsel based upon the level of participation

---

[1] A Mud Logger typically works twelve (12) hours day, thus a three day work week will result in thirty-six (36) hours without overtime.

and cooperation they had received, and agreed by Defendants. See Paragraph VII (2) of the Settlement Agreement, **Exhibit "A,"** pg 8.

### e. Attorney's Fees and Costs.

Plaintiffs' counsel will receive $566,666.67 in attorney's fees and $12,000.00 for costs of litigation. Given the extensive motion practice and document discovery conducted, Plaintiffs' counsel has expended 1289.6 hours on this matter, and it is anticipated that Plaintiffs' counsel will expend more hours through the conclusion of this litigation. Lead Counsel Jason T. Brown has had many class and collective actions certified with each case having its own level of complexity, to name a few, Eshelman, et al. v. Client Services, Inc., et al., No. 0822-CC-00763 in the Twenty-Second Judicial District of the Missouri Circuit Court, Miller, et al. v. Aon Risk Services Companies, Inc., et al., No. 1:08-cv-05802 in the United States District Court, Northern District of Illinois, and Lambert, et al. v. Sykes Enterprises, Incorporated, No. 4:11-cv-00850-BSM in the United States District Court, Eastern District of Arkansas. Mr. Brown also served as a Legal Adviser and Special Agent for the FBI. In private practice, employment class and collective actions are a focus of his practice. Additionally, Plaintiffs' counsel has incurred costs in the amount of $12,000.00 which will be reimbursed by Defendants pursuant to the terms of the settlement agreement.

Given the extensive motion practice and document discovery, the level of success obtained, and the comparative fees and expense incurred by Defendants, the Parties agree that this is a reasonable settlement and the fee is fair, and thus should be upheld by the Court. See, e.g., *Martinez v. Bohls Bearing Equip. Co*., 361 F. Supp. 2d 608 (W.D. Tex. 2005) (Private settlement of FLSA claims agreed to by all parties should be enforced); *Martin v. Spring Break*

*'83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012) (Private FLSA settlement agreements between the parties should be enforced.)

### IV. LEGAL ARGUMENT

This is a class action brought by Plaintiffs for unpaid overtime wages pursuant to the FLSA and Pennsylvania state wage and hour laws. The Parties submit that the settlement reached is fair, adequate and reasonable and thus should be approved by this Court.

### A. Legal Standard for Approving the FLSA Collective Settlement

In a proposed FLSA collective action, employees who wish to join the litigation must affirmatively opt-in by "filing a written consent to become a party with the court." *Scheidler v. Safeway Rd. Servs.*, 2014 U.S. Dist. LEXIS 52442, at 2 (S.D.Tex., April 16, 2014). In determining whether a plaintiff's claims should be certified as a collective action, courts must examine whether the plaintiff and putative collective members are "similarly situated." *Id; Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693, at * 697 (W.D.Tex., October 29, 2009). To make this ultimate factual determination, courts typically consider three factors: "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appear to be individual to each plaintiff, and (3) fairness and procedural considerations." *Clary v. Southwest Airlines*, 2007 U.S. Dist. LEXIS 96411, at *8 (N.D. Tex., December 17, 2007).

There is an overriding public interest in favor of settlement particularly in class action lawsuits. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). The parties are even permitted to "privately settle a FLSA claim involving a bona fide dispute" as to the amount of overtime hours the plaintiffs worked or the overtime compensation due. *Martin*, 688 F.3d at 255. The Fifth Circuit in *Martin* adopted the holding and logic of *Martinez v. Bohls Bearing Equip. Co*., 361 F.

Supp. 2d 608 (W.D. Tex. 2005) that the parties' private settlement of the FLSA claims involving bona fide disputes should be enforceable. *Id*. at 634. The Fifth Circuit in *Martin* further noted that the dispute between the employees and the employer over the number of hours for which they were owed their set rate of pay was a bona fide dispute for the purpose of FLSA settlement. *Martin*, 688 F.3d at 255.

**B. The Collective Settlement Involves the Resolution of Bona Fide Disputes**

Plaintiffs commenced this action alleging Defendants' misclassification of Mud Loggers as exempt and failure to pay them proper overtime compensation in violation of the FLSA. Defendants defended their position that all the Mud Loggers were properly classified as exempt from overtime pursuant to the Learned Professional Exemption of the FLSA, 29 C.F.R. § 541.300(a). Additionally, Defendants relied on an opinion letter from a law firm indicating that the Mud Logger position was properly classified.  Accordingly, bona fide disputes exist as to the amount of overtime hours worked and overtime compensation due to the Plaintiffs and all other Mud Loggers. "A disagreements over 'hours worked or compensation due' clearly establishes a bona fide dispute." *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, *51 (D.N.J. April 8, 2011) (citing *Hohnke v. United States.*, 69 Fed. Cl. 170, 175 (Fed. Cl. 2005). "The institution of a federal court litigation followed [by] aggressive prosecution and strenuous defense demonstrates the palpable bona fides of this dispute." *Id.* Hence, the purpose of this collective settlement is to resolve the bona fide disputes between the Parties.

**C. The Court Should Certify a Nationwide Collective Action for Settlement Purpose**

The Parties stipulate to a nationwide collective for settlement purpose. The Nationwide Collective includes all Mud Loggers, also referred to as Wellsite Geologists, who were employed by Defendants nationwide other than the State of Pennsylvania at any time from March 20, 2012

to the present. This case was commenced by two (2) Mud Loggers on behalf of all the Mud Loggers to claim unpaid overtime wages. Plaintiffs allege that they and the putative collective members were all paid a day rate, forced to work excessive hours, but deprived of proper overtime compensation due to Defendants' commonly applied policy and practice of classifying them as exempt from overtime. Defendants defended that all the Mud Loggers were properly compensated pursuant to the Learned Professional Exemption of the FLSA. Accordingly, Plaintiffs and the putative collective members, who share the same factual and employment settings and face the same defense argued by Defendants, are similarly situated. This settlement does not only affect the rights of named Plaintiffs but also all the other similarly situated Mud Loggers, and thus it is only fair when all the collective members are given notices and an opportunity to affirmatively opt in before their statute of limitations are running out.

For the forgoing reasons, the Court should certify the Plaintiffs' claims as a Nationwide Collective for the settlement purpose and order Third Party Claims Administrator to send out notice of lawsuit and consent to join form (**Exhibit "B"**) within seven (7) days of the order of preliminary approval. The notice and consent to join form agreed by the Parties is fair and reasonable. It informs the collective members of their rights to opt in and explains the procedure of the settlement, the settlement formula and their opportunity to be heard at the Final Fairness Hearing.

**D. Legal Standard for Certifying the Pennsylvania Rule 23 Class for Settlement Purpose**

Review of a proposed class action settlement is a two-step process: (1) preliminary approval and (2) a subsequent fairness hearing. *Mazon v. Wells Fargo Bank, N.A.*, CIV. 10-700 RBK/KMW, 2011 WL 6257149, at *1 (D.N.J. Dec. 14, 2011). The Manual for Complex Litigation describes this process as follows:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties.... The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the ... proposed settlement, and date of the fairness hearing.

Manual for Complex Litigation (Fourth) § 21.632 (2008). Preliminary approval is not binding and should be granted so long as the settlement is not obviously deficient. *Bernhard v. T.D. Bank, N.A.,* No. 08-4392 (RBK/AMD), 2009 WL 3233541, at *1 (D.N.J. Oct. 5, 2009).

As discussed in detail below, preliminary approval of a class action settlement involves two fundamental inquiries. First, the Court must determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1998). The second inquiry is whether the proposed settlement appears "fair, reasonable and adequate." Fed. R. Civ. P. 23(e); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). In determining whether to grant preliminary approval, the U.S. Court of Appeals for the Third Circuit has noted that "[t]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *Warfarin Sodium*, 391 F.3d at 535; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1986) (noting Third Circuit's policy of "encouraging settlement of complex litigation that otherwise could linger for years"); *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("all Federal Circuits recognize the utility of … 'settlement classes' as a means to facilitate the settlement of complex nationwide class actions"). In light of this public policy in favor of settlement generally and because this

Settlement meets the Rule 23 requirements, the Settlement should be approved, and the Settlement Class should be certified.

The Parties stipulate to a Rule 23 settlement class and all the underlying threshold criteria to satisfy Rule 23. "Rule 23(a) contains four threshold requirements for class certification: '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" *Hall v. Best Buy Co.*, 274 F.R.D. 154, at 164-165 (E.D.Pa., March 24, 2011) (citing Fed. R. Civ. P. 23(a).These four requirements are commonly referred as "numerosity," "commonality," "typicality," and "adequacy." Besides these four (4) requirements, a plaintiff must also satisfy one of the three requirements under Fed. R. Civ. P. 23(b). The Plaintiffs in this case seek certification of a Rule 23 class pursuant to Fed. R. Civ. P. 23(b)(3) – "[f]irst, 'common questions must predominate over any questions affecting only individual members' ('predominance'), and second, class action litigation must be 'superior to other available methods for the fair and efficient adjudication of the controversy' ('superiority')." *Hall*, 274 F.R.D. at 165 (citing Fed. R. Civ. P. 23(b)(3); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004). These requirements are easy to meet.

In determining the numerosity requirement, a number of forty (40) putative class numbers typically suffices. See, e.g., *Weiss v. York Hospital*, 745 F.2d 786, at 808, fn 25 (3rd Cir. September 27, 1984) ("while there are exceptions, numbers in excess of forty…have sustained the requirement.") With regard to the commonality requirement, courts generally find for the plaintiff if "all class members were in a substantially identical factual situation and that the questions of law raised by the plaintiff are applicable to each [class] member." *Weiss*, 745 F.2d at 809. To examine the typicality requirement, courts ask "whether the named plaintiffs'

claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, at 295-296 (3rd Cir. August 4, 2006) (citing *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994); *Hall*, 274 F.R.D. at 165. The last requirement under Rule 23(a), adequacy, "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, at 625 (1997).

The requirements under Rule 23(b)(3), predominance and superiority, are also easy to meet. "[W]here common liability issues that are susceptible to class-wide proof constitute a significant part of the case, predominance may be satisfied even where damages must still be proven by individually." *Hall*, 274 F.R.D. at 166-167. "This is particularly so where damages can be determined by formula, statistical analysis, or other easy or essentially mechanical methods." *Id.* at 167 (citing *Chiang v. Veneman*, 385 F.3d 256, 273, 46 V.I. 679 (3d Cir. 2004). To determine superiority, courts must consider "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3).

Finally, Rule 23(e) requires a determination by the district court that the proposed settlement is "fair, reasonable and adequate." *GM Trucks*, 55 F.3d 768, 785 (3 Cir. 1995). The Third Circuit has adopted a nine-factor test to help determine whether a settlement is "fair, reasonable, and adequate." The elements of this test – known as the "*Girsh* factors" – are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of

reasonableness of the settlement in light of all the attendant risks of litigation.

*GM Trucks*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). As argued below, the proposed Rule 23 Class for settlement meets all these requirements. The Court should certify the Rule 23 settlement class as it is a fair, adequate and reasonable method to resolve this matter.

**E.  The Court Should Certify the Pennsylvania Rule 23 Class**

The Parties stipulate to a Rule 23 class for settlement purpose. The Pennsylvania Rule 23 class members are all Mud Loggers, also known as Wellsite Geologists, who were employed by Defendants in the State of Pennsylvania at any time from March 20, 2012 to the present. Although the employees worked in the State of Pennsylvania, the headquarters of the company is in Midland, Texas.  The Court has jurisdiction over these issues as the action was commenced in Texas alleging a nationwide collective and a Pennsylvania class. See, e.g., *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040 (S.D.Tex., March 20, 2012) (certifying a nationwide Rule 23 class for settlement purpose; *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex., February 21, 2007) (certifying a nationwide Rule 23 class for settlement purpose).

The Parties submit that the Pennsylvania Rule 23 settlement class meets all the requirements under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3). First, there are at least fifty (50) putative class members employed by Defendants during the applicable time period, so the numerosity requirement is satisfied. Second, the commonality requirement is met because Plaintiffs and all the other class members share the same factual situation and suffer the same injury. Plaintiffs and all other Mud Loggers allege they were classified as exempt from overtime, paid a day rate and never received any overtime compensation. The only issue in this case is whether Plaintiffs are entitled to overtime, an issue that is common and applicable to all other

class members. Third, Plaintiffs also satisfy the typicality requirement as their overtime claims are the gist of this case and typical of the class. The incentives of the Plaintiffs are aligned with all of the others in the class because they all seek overtime compensation that should have paid pursuant to the FLSA. Fourth, there are no conflicts of interest between named Plaintiffs and the class they seek to represent. Each Plaintiff's and class member's damages are calculated according to the fixed settlement formula and depending on each individual's length of employment with Defendants. Plaintiffs' only interest is to make sure all the class members are compensated for the overtime hours worked. Fifth, the common issue that whether Plaintiffs are entitled to overtime compensation predominate the whole class as the overtime claim is Plaintiffs' whole case and the resolution of this common issue affects all the Mud Loggers. Lastly, a class settlement is a superior way to resolve this case. Upon information and belief, there are no other class members who want to file separate actions and there are no other related actions currently pending in other courts. Defendants are headquartered and located in this State and District and thus this Court is the convenient and proper forum to approve this settlement. See also

For the reasons set forth above, the Court should certify the Pennsylvania Rule 23 class for purpose of settlement, order notice and claim form (**Exhibit "C"**) to be sent to all class members within seven (7) days of the order of preliminary approval and schedule a Final Fairness Hearing for final approval of the settlement.

**F. The Court Should Certify the Pennsylvania Rule 23 Class Settlement Notice**

The notice and claim form agreed by the Parties is fair and reasonable. Pursuant to Rule 23 (c)(2)(B), a Rule 23(b)(3) Class notice must "clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

Fed. R. Civ. P. 23(c)(2)(B). The attached notice (**Exhibit "C"**) satisfies all these requirements, describes the procedure of the settlement and the settlement formula, and also informs the class members of their rights of exclusion, their rights to seek other attorneys' representation and their opportunity to object at the Final Fairness Hearing. Hence, this notice should be approved.

**G. This Settlement is Fair, Reasonable and Adequate.**

1. Complexity, Expense, and Likely Duration of the Litigation

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001). "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *GM Trucks*, 55 F.3d at 812. This factor undoubtedly weighs in favor of settlement.

In *Warfarin Sodium*, the parties had already litigated the case for three years. 391 F.3d at 537. Nevertheless, the court concluded that the first *Girsh* factor was satisfied:

> We agree with the District Court's conclusion that this factor favors settlement because continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial. Moreover, it was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class. In a class action of this magnitude, which seeks to provide recovery for Coumadin consumers and TPPs nationwide, the time and expense leading up to trial would have been significant.

*Id.* at 536. In this litigation, the path to a final judgment would likely to be equally long or longer. This case has been pending for less than one year. Additional discovery, including numerous depositions spread across the country would be sought, requiring time-consuming

review, preparation and travel, if this litigation continues. The case also would require extensive expert analysis of the actual primary job duties of the named Plaintiffs and the putative collective and class members. This case likely would shape up to be a battle of the experts, and thus, expert expenses would be substantial. As a putative class action, complex legal and factual issues would be the subject of pretrial motions, including for Rule 23 class certification. The presence of several competing experts on liability and damages would likely also have led to numerous *Daubert* motions. The class certification decision may have also lead to a Rule 26(f) interlocutory appeal; potentially delaying prosecution of the case should a stay pending appeal be granted. Given the prospect of protracted litigation, engendering enormous time and monetary expenditure, the proposed settlement conserves valuable resources of the Parties and the Court and this factor weighs strongly in favor of preliminary approval.

### 2. The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Prudential,* 148 F.3d at 318. Of course, since the proposed Settlement Class has not yet received notice of the settlement, the Court cannot measure the reaction of the class at this stage. However, Plaintiffs are confident that class members will overwhelmingly support the settlement as the proposed terms are reasonable, fair and adequate given all the facts in this case.

### 3. The Stage of Proceedings and the Amount of Discovery Completed

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Cendant*, 264 F.3d at 235; *GM Trucks*, 55 F.3d at 813.

This case has been pending for almost a year, and the Parties have conducted extensive

document discovery and motion practice which have uncovered important facts both related to Plaintiffs' claims and Defendants' defenses. Moreover, Plaintiffs Counsel has extensive experience in litigating cases of this type, so they are also aware of their legal merits and pitfalls. Class Counsel is absolutely confident that they have a thorough appreciation of the facts – good and bad – which bear upon the merits of the claims in this litigation.

### 4. Risks of Establishing Liability

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GM Trucks*, 55 F.3d at 319. While Plaintiffs are confident in the merits of their case, they also recognize the uncertainties of litigation where Plaintiffs must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). And, although Plaintiffs are confident that their claims are legally sound, there are always risks that Plaintiffs have to face. These risks include the risk of denial of class certification or the granting of Defendants' summary judgment. The Settlement provides substantial monetary and injunctive benefits without the inherent risk of establishing liability at trial. Thus, these inherently unpredictable risks in establishing liability and certifying a litigation class weigh in favor of settlement.

### 5. Risks of Establishing Damages

"Like the fourth factor, this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant*, 264 F.3d at 238. The court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential*, 148 F.3d at 319. In *Warfarin Sodium*, the trial court found that the risk of

establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through a 'battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004). Similarly, in *Cendant*, the Third Circuit reasoned that there was no compelling reason to think that "a jury confronted with competing expert opinions" would accept the plaintiff's damages theory rather than that of the defendant, and thus the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239. The same is true here as Settlement Class Members could have difficulty at trial establishing that they were damaged and to what extent they were damaged. There is no reason to suspect Plaintiffs would have achieved a better result through continued litigation, and certainly no reason to expose the proposed settlement relief to such risks. Thus, this factor weights in favor of preliminary approval.

### 6. Risks of Maintaining Class Action Status Through Trial

Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action, *GM Trucks*, 55 F.3d at 817, the court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. "Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (internal citations omitted). While, for the reasons stated above, Plaintiffs firmly believe that this case is appropriate for class action treatment, regardless of any settlement, it is undeniable that given the Third Circuit's requisite rigorous class certification analysis, class certification for settlement purposes removes some of the hurdles upon which some courts have denied certification of a litigation class.

Moreover, any decision granting certification might have been subjected to the cost, delay, and the uncertainty of a Rule 23(f) appellate challenge, before the class could proceed to trial; and an appeal from any verdict or judgment in favor of the class likewise could follow.

If a class could not be certified here, it would leave class members without the resources and financial incentive to pursue claims on their own behalf, with the practical result of no recovery by anyone. *See Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original). The proposed Settlement provides a remedy now to all class members, rather than risking an uncertain result after years of expensive litigation. As the Third Circuit explained in *Warfarin Sodium*:

> A district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable. Although Appellants' concerns about the manageability of a multistate class of consumers and TPPs, as we discussed above, did not pose a problem for the certification of a settlement class, there is a significant risk that such a class would create intractable management problems if it were to become a litigation class, and therefore be decertified. We agree with the District Court that the significant risk that the class would be decertified if litigation proceeded weighs in favor of settlement.

391 F.3d at 537. Thus, this factor weighs in favor of preliminary approval.

### 7. Ability to Withstand Greater Judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240. Although it is possible that Defendants could withstand a judgment greater than it is paying here, there is some concern that the Class could be left without a remedy. Even if the concern were not present, however, that would not, by itself, militate against approval. In *Warfarin Sodium*, for example, the court stated:

Although the plaintiffs do not dispute that DuPont's total resources far exceed the settlement amount, the fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the consumer and TPP class members are entitled to under the theories of liability that existed at the time the settlement was reached. Here, the District Court concluded that DuPont's ability to pay a higher amount was irrelevant to determining the fairness of the settlement. We see no error here.

391 F.3d at 538; *see also GM Trucks*, 55 F.3d at 818 (finding "no error" in the district court's decision not to "attribute any significance" to defendant's ability to withstand a greater judgment). Thus, this factor too weighs in favor of preliminary approval.

### 8. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The last two *Girsh* factors are usually considered together. They ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322; *see also Warfarin Sodium*, 391 F.3d at 538 (court should consider "whether the settlement represents a good value for a weak case or a poor value for a strong case"). As Judge Becker explained in *GM Trucks*, "[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." 55 F.3d at 806.

At the preliminary approval stage, the Court need only find that the proposed settlement is "in the range of fair and reasonable." *See, e.g., Spark v. MBNA Corp.*, 48 Fed. Appx. 385, 387-88 (3d Cir. 2002); *see also Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980) (finding the proposed settlement to be "within the range of possible approval"); *Desantis v. Snap-On Tools Co., LLC*, No. 06-cv-2231 (DMC), 2006 WL 3068584, at *6 (D.N.J. Oct. 27, 2006) (holding that the settlement falls "within the range of reasonableness"); *Simon v. KPMG LLP*, No. 05-CV-3189 (DMC), 2006 WL 1541048, at *8 (D.N.J. June 2, 2006)

(same).

In making its Rule 23(e) determination, the Court should apply "an initial presumption of fairness when … (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class object[s]." *Warfarin Sodium*, 391 F.3d at 595; *Cendant*, 264 F.3d at 232 n.18. Here, the parties engaged in arms-length negotiations through an independent, well-experienced mediator. Additionally, Plaintiffs were properly equipped to understand the strengths and weaknesses of their cases given the discovery and investigation they had performed. The result achieved for the Class was "extraordinary." Thus, this factor weighs in favor of preliminary approval.

Accordingly, all the *Girsh* factors are met, and the Settlement should be preliminarily approved.

## V. CONCLUSION

Given the risks, uncertainty of the results, costs and duration of this case if the adversarial litigation continues, the Parties respectfully seek preliminary approval of the settlement and believe that the settlement is a fair, adequate and reasonable resolution of this matter. The Parties respectfully request the Court grant preliminary approval of the settlement, order notice and consent to join form to all collective members and notice and claim form to all class members, and schedule a Final Fairness Hearing for final approval of the settlement.

Dated: May 23, 2014

**RESPECTFULLY SUBMITTED**,

**JTB LAW GROUP, L.L.C.**

By: /s/ *Jason T. Brown*
Jason T. Brown
Admitted *Pro Hac Vice*
jtb@jtblawgroup.com
Zijian Guan
Admitted *Pro Hac Vice*
cocozguan@jtblawgroup.com
155 2nd Street, Suite 4
Jersey City, NJ 07302
Phone: (201) 630-0000
Fax: (855) 582-5297

-And-

BRANHAM LAW, LLP
Charles W. Branham
tbranham@branham-law.com
State Bar No. 24012323
3900 Elm Street
Dallas, Texas 75226
Telephone: (214) 722-5990
Facsimile: (214) 722-5991

*Attorneys for Plaintiffs*

**SPURGIN LAW GROUP**

By: /s/ *Steve Spurgin*
Steve Spurgin
steve@spurginlaw.com
8300 Montana Avenue
El Paso, Texas 79925
Phone: (915) 779-2800
Fax: (915) 779-2801

*Attorneys for Defendants*

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I conferred with Defendants' counsel Steve Spurgin concerning the contents of this Motion. Mr. Spurgin indicated that Defendants would join this motion.

/s/ *Jason T. Brown*
Jason T. Brown

<u>**CERTIFICATE OF SERVICE**</u>

I, Jason T. Brown, hereby certify that on May 23, 2014 I caused a true copy of the foregoing Joint Motion for Preliminary Approval of the Settlement to be served upon the following counsel for Defendants via ECF generated Notice:

Steve Spurgin, Esquire
(steve@spurginlaw.com)
SPURGIN LAW FIRM
8300 Montana Avenue
El Paso, Texas 79925
Office: (915) 779-2800

*Attorneys for Defendants*

<u>*/s/ Jason T. Brown*</u>
Jason T. Brown